**SO ORDERED.**

**SIGNED this 21 day of August, 2024.**



_____
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# NEW BERN DIVISION

IN RE:

CELEBRATION COTTAGE AB, LLC,                     Case No. 24-01991-5-JNC
                                                 Chapter 11
    Debtor.
_____

## ORDER DENYING MOTION TO DESIGNATE DEBTOR AS SINGLE ASSET REAL ESTATE ENTITY

The matter before the court is the Motion to Designate Debtor as a Single Asset Real Estate Entity as of the Petition Date, in Addition to Motion for Relief from Stay (Dkt. 19; the "Motion") filed by creditor BIP Canton, LLC ("BIP") on July 2, 2024. The Debtor, Celebration Cottage AB, LLC (the "Debtor"), filed a response in opposition on July 22, 2024 (Dkt. 37; the "Response"). A hearing was set and held in Greenville, North Carolina on August 13, 2024. Paul A. Fanning and Lilian L. Faulconer appeared on behalf of BIP. George M. Oliver appeared on behalf of the Debtor.

## BACKGROUND

The parties' papers and testimony largely agreed as to the factual background. On December 4, 2020, the Debtor as the borrower executed and delivered to BIP, as Lender, a promissory note (the "Note") secured by a recorded deed of trust on real property located at 302

Glenn Street, Atlantic Beach, North Carolina. The Note was made in the original amount of $1,249,967.39 with an original maturity date of December 4, 2021. (Dkt. 19, Exhibit A). The Note came due and was not paid but instead modified on March 28, 2022, which extended the maturity date to April 4, 2023, and imposed a variable interest rate of prime plus 3%. (Dkt. 19, Exhibit C). In addition, the principal indebtedness was increased to $1,399,967.39.

The Debtor filed its voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code on June 14, 2024 (the "Petition Date"). It lists ownership of the following real estate in its schedules:

(1) Building and lot at 302 Glenn Street, Atlantic Beach, NC ("Lot 302 Cottage");

(2) Vacant lot at 304 Glenn Street, Atlantic Beach, NC ("Lot 304");

(3) Vacant lot at 307 Glenn Street, Atlantic Beach, NC ("Lot 307"); and

(4) Building and lot at 1807 Bridges Street, Morehead City, NC ("1807 Bridges").

The Lot 302 Cottage and Lot 304 are contiguous oceanfront real estate; Lot 307 is across the street. 1807 Bridges is an estimated three miles away on the mainland, with Bogue Sound and a bridge buffering it from the other properties. The schedules reflect no other real property or tangible personal assets. BIP is the sole listed creditor, and it asserts a lien against the Lot 302 Cottage only.

When the Debtor failed to pay the balance of the Note as modified, the parties continued to negotiate but eventually an impasse was reached. Before BIP initiated foreclosure proceedings, the Debtor filed its subchapter V Chapter 11 petition. Exclusive of attorneys' fees and legal expenses, BIP asserts that is currently owed at least $1,537,000 on the note as of the Petition Date.[1]

---

[1] At the hearing, various higher payoff amounts were referenced, but the Debtor's representative acknowledged that the Petition Date debt was at least $1,537,000. In this order, the court makes no finding as to the actual Petition Date amount owed but will use the $1,537,000 approximation, plus legal fees etc.

Prepetition the Lot 302 Cottage was leased to an operating entity owned by insiders known as The Cottage at Crystal Coast, LLC (the "Cottage LLC"). Until the first week of June 2024, for a fee the Cottage LLC organized and oversaw special events such as weddings, concerts, and other celebrations for members of the public.[2] Frequently, Lot 304 and Lot 307 were used for overflow and parking for these events. 1807 Bridges was never used in conjunction with the Lot 302 Cottage events but instead used as a residence by an owner of the Debtor (Jessica Horton) and for short-term lodging rentals.

The Debtor is currently proceeding as a small business entity as defined in 11 U.S.C. § 1182(1) in order to proceed under subchapter V. BIP argues the Debtor should instead be designated as a single asset real estate entity ("SARE") as defined at 11 U.S.C. § 101(51B). BIP states that, considering Debtor's prepetition business operations as a whole, the four properties constitute a single economic project, which generated substantially all of the Debtor's gross income and the Debtor did not conduct business other than operating the single project. If all three of these conditions apply to the case at hand, the Debtor is bound by requirements forced on SARE debtors by the Bankruptcy Code and many of the Debtor's perceived advantages as a subchapter V debtor would disappear. In its Response, the Debtor maintains that it is not a SARE debtor because the four parcels of real property do not operate in tandem as one project.

## DISCUSSION

### A.    Requirements to Proceed Under Subchapter V

To proceed under subchapter V, a debtor must meet the definitional requirements of § 1182(1) and elect its application. 11 U.S.C. § 103(i); *In re Blue*, 630 B.R. 179, 186 (Bankr. M.D.N.C. 2021). Those requirements are:

---

[2] A document purporting to be a lease between the Debtor and Cottage LLC was introduced as Exhibit 3 at the hearing. The court makes no finding here as to the validity of the asserted lease.

  (1) Debtor.  The term "debtor"

  (A) subject to subparagraph (B), means a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning single asset real estate) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $7,500,000 (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor.

§ 1182(1)(A).³

Pursuant to Rule 1020(a) of the Federal Rules of Bankruptcy, a debtor proceeds under subchapter V or a small business debtor if indicated on the petition "unless and until the court enters an order finding that the debtor's statement is incorrect." Fed. R. Bankr. P. 1020(a); *In re Blue,* 630 B.R. at 186–87. Objections by a party in interest to a subchapter V election must be filed "no later than 30 days after the conclusion of the meeting of creditors held under § 341(a) of the Code, or within 30 days after any amendment to the statement, whichever is later." *Id.* BIP timely filed its objection in this case.

In addition, "[w]hen a party challenges debtor's eligibility to file under a particular chapter of the United States Bankruptcy Code, the debtor carries the burden of establishing such eligibility." *In re Blue,* 630 B.R. at 187 (citing *In re Wright*, 2020 WL 2193240 at *2 (internal citations omitted)). To carry that burden, a debtor must show: (1) it meets the definition of a "person"; (2) it is "engaged in commercial or business activities"; (3) it does not have aggregate debt exceeding $7,500,000 as of the date of petition; and (4) at least 50 percent of its debts arise

---

³ Certain provisions of the Bankruptcy Threshold Adjustment and Technical Corrections (BTATC) Act, including those governing aggregate dollar eligibility limitations, were set to sunset two years from the date of enactment. Timely legislative action to extend these provisions was blocked, so they expired at midnight on June 21, 2024. As a result, 11 U.S.C. § 1182(1) no longer includes the BTATC increased aggregate debt limit of $7.5 million in the subchapter V definition of a "debtor." However, the Petition Date in this case is June 14, 2024, before the applicable provisions expired.

4

from the commercial or business activities of the debtor. *In re Offer Space, LLC*, 629 B.R. 299, 304 (Bankr. D. Utah 2021) (citing § 1182(1)(A)).

### B.  SARE Projects

The term "single asset real estate" is statutorily defined as (1) real property constituting a single property or project, other than residential real property with fewer than 4 residential units, (2) which generates substantially all of the gross income of a debtor who is not a family farmer and (3) on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto. 11 U.S.C. § 101(51B). "The wording of this statute is somewhat confusing, but in plain English requires a debtor who owns only one real estate-based business to show it does 'more' than just manage the real property." *In re ENKOGS1, LLC*, 626 B.R. 860, 863 (Bankr. M.D. Fla. 2021). In other words, "[d]oes the Debtor provide additional value or activities (other than property management) that would remove it from categorization as a 'single asset real estate' project?" *Id.*

Designation as a SARE debtor is significant because it triggers a means for mandatory, expedited stay relief under § 362(d)(3) of the Code. To avoid mandatory stay relief, a SARE debtor must: (i) propose a confirmable plan, or (ii) commence monthly payments within "90 days after the entry of the order of relief (or such later date as the court may determine for cause entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later." 11 U.S.C. § 362(d)(3). The purpose of section 362(d)(3) is "to address perceived abuses in single asset real estate cases, in which debtors have attempted to delay mortgage foreclosures even when there is little chance that they can reorganize successfully." *In re Alvion Properties, Inc.,* 538 B.R. 527, 531 (Bankr. S.D. Ill. 2015) (quoting 3 *Collier on Bankruptcy* ¶ 362.07[5][b] at 362–122 (Alan N. Resnick & Henry J. Sommer eds., 16 ed.)).

### C. Analysis

As discussed above and on the record at the hearing, in order to constitute a SARE, the following elements must each be met: (1) the asset consists of real property constituting a single property or project, other than residential real property with fewer than 4 residential units, (2) which generates substantially all of the gross income of a debtor who is not a family farmer, and (3) on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto. 11 U.S.C. § 101(51B). The court need not analyze the second and third elements because the Debtor has carried its burden to show it does not meet the first element of a SARE debtor.

"Determining whether multiple properties constitute a 'single project' requires an examination of the facts." *In re Alvion Properties, Inc.,* 538 B.R. at 533. "[T]he properties must be linked together in some fashion in a common plan or scheme involving their use. The mere fact of common ownership, or even a common border, will not suffice." *In re Hassen Imports Partnership,* 466 B.R. 492, 507 (Bankr. C.D. Cal. 2012) (internal citations omitted). Stated another way, "the multiple parcels of real estate must be purchased, developed, or sold pursuant to a 'common plan or scheme,' linked together by 'common usage' or in pursuit of a 'common purpose.'" *In re Yishlam, Inc.,* 495 B.R. 328, 331 (Bankr. S.D. Tex. 2013) (citations omitted).

Adjacent parcels of vacant or unused real property are often present in SARE cases. *In re Tad's Real Est. Co.*, No. 97-11999, 1998 WL 34066143 (Bankr. S.D. Ga. Mar. 23, 1998) (vacant land); *In re Charterhouse Boise Downtown Props., LLC*, No. 07-01199-JDP, 2008 WL 4735264 (Bankr. Idaho Oct. 24, 2008) (unfinished high-rise commercial building); *In re Pioneer Austin E. Dev. I, Ltd.*, No. 10-30177-HDH-11, 2010 WL 2671732 (Bankr. N.D. Tex. July 1, 2010) (vacant land). On the other end of the spectrum, rental dependent debtors such as hotels often avoid SARE

status if they provide other material services for a fee. *See In re ENKOGS1, LLC*, 626 B.R. at 864 (finding that a seventy-nine-room hotel with fifteen employees operated as a substantial business other than merely managing real estate).

An example of the two sides to this coin is found in two Middle District of North Carolina cases. In the first case, the court found that a debtor operating a golf course with other associated fee-generating aspects to the operation such as golf cart rentals, a swimming pool, food concessions, and owning adjacent land not used for golfing constituted operating a *business* on the property versus only holding real property in a single business project. *In re Larry Goodwin Golf, Inc.,* 219 B.R. 391 (Bankr. M.D.N.C. 1997). In contrast, the same court found SARE status present in *In re Carolina Pediatric Eye Properties, LLC,* No. 15-50036, 2015 WL 1806047 (Bankr. M.D.N.C. Mar. 26, 2015), where the debtor was a holding company that "merely own[ed] the land on which a separate entity" not in bankruptcy operated the actual business. *Id.* at *3.

At the hearing, counsel for BIP asserted this case was more akin to *Carolina Pediatric*, arguing the Debtor here is only a holding company that simply owns real estate, while the non-debtor pre-petition operating entity (Cottage LLC) operated the actual business as of the Petition Date. However, while this argument has some merit regarding the adjacent properties located on the Atlantic Beach side of Bogue Sound (Lot 302 Cottage and Lots 304 and 307), it wholly ignores the presence of the fourth real estate asset located on the mainland side, 1807 Bridges. The testimony reveals that Cottage LLC did hold events at the Lot 302 Cottage that utilized Lots 304 and 307 for parking, food trucks, and even music acts. No independent businesses operated on the two vacant lots, and it is unclear from the record exactly when either of the vacant lots were actually listed for independent sale. However, it is indisputable that the fourth property, 1807 Bridges, is three miles away, over a bridge, is used as a residence by an owner of the Debtor, and

has been rented for short-term lodging. More importantly, and unlike Lots 304 and 307, 1807 Bridges has never been used in conjunction with Lot 302 Cottage events.[4] Further, the Debtor reports while going forward the Lot 302 Cottage may be rented through vacation or short-term rental websites like Airbnb.com, all three Atlantic Beach properties are being listed for sale in this chapter 11 case in an effort to satisfy the BIP claim. Meanwhile, 1807 Bridges, which has not been listed for sale, will continue to be used as a short-term rental in an effort to generate cash-flow. Considered together, the three Atlantic Beach properties and the Morehead City house do not constitute a single or unified business real estate project.

## CONCLUSION

For the foregoing reasons, the request to designate the Debtor as a single asset real estate entity is **DENIED**, as is the alternative relief request for conversion to chapter 7. As announced at the hearing, for independent reasons BIP's request for relief from automatic stay also contained in the Motion is held in abeyance for further hearing. That matter is set and noticed for further hearing on September 5, 2024, at 2:00 p.m. in Greenville, North Carolina. The automatic stay will remain in effect in the interim.

**END OF DOCUMENT**

---

[4] At the hearing, BIP questioned the good faith of the Debtor in filing its petition. Had 1807 Bridges been transferred to or acquired by the Debtor suspiciously close in time to the Petition Date, an inquiry into good faith might be in order. However, the Debtor acquired 1807 Bridges nearly a year prior to the Petition Date—long before it considered filing chapter 11—and no evidence supporting a finding of bad faith was presented. Consequently, at least in the context of SARE versus subchapter V status, the presumption of good faith survives.

8